J-A30028-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FABRIZIO SPAGNOLO AND ELISA D. SPAGNOLO, CO-ADMINISTRATORS OF THE ESTATE OF LUIGI SPAGNOLO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JOHN F. RAGANO, EXECUTOR OF THE ESTATE OF CATALDO VASAPOLLI | |
| IN RE: A.P.S. RECYCLING, INC. | |
| APPEAL OF: JOHN F. RAGANO, EXECUTOR OF THE ESTATE OF CATALDO VASAPOLLI AND A.P.S. RECYCLING, INC. | No. 1030 EDA 2014 |

Appeal from the Judgment Entered June 4, 2014
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 4294 CV 2010

BEFORE: LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:                     **FILED APRIL 30, 2015**

Appellant, John F. Ragano, executor of the Estate of Cataldo Vasapolli, deceased, appeals from the June 4, 2014 judgment granting the petition filed by Appellees, Fabrizio Spagnolo and Elisa D. Spagnolo, co-administrators of the Estate of Luigi Spagnolo, deceased, (Co-

_____

[*] Retired Senior Judge assigned to the Superior Court.

Administrators) for the involuntary dissolution of the deceased parties' corporation, A.P.S. Recycling, Inc.[1]  After careful review, we affirm.

A summary of the factual and procedural history of this case follows. In June 2004, brothers-in-law Cataldo Vasapolli and Luigi Spagnolo entered into an agreement regarding the purchase of certain real estate at 2 Katz Road in the Borough of Stroudsburg, Monroe County, which was the site of a scrap metal and recycling business.[2]  Specifically on June 29, 2004, the subject property, including a bill of sale for personal property connected with the recycling business and a junkyard-operating license, was sold by Unity Bank to Spagnolo for a purchase price of $1,012,500.00.  Vasapolli paid the purchase price and closing costs.[3]  At the same time, Spagnolo executed a promissory note and mortgage for the amount of the purchase price in favor of Vasapolli.  The note and mortgage contained no provision for interest or periodic payment, the note being payable on demand.  On or about July 19,

_____

[1] The judgment and the trial court's January 28, 2014 order involve two distinct matters that were tried together.  Only paragraphs four and five of the January 28, 2014 order and the portion of the June 4, 2014 judgment referencing them are pertinent to this appeal.  We, therefore, treat paragraphs four and five as a separate order and final judgment, which is the subject of this appeal.  **See Moyer v. Gresh**, 904 A.2d 958, 961 (Pa. Super. 2006) (treating distinct matters contained in a single order as separate orders).

[2] A dispute over the nature and extent of that agreement is at the heart of a separate appeal at 1026 EDA 2014.

[3] The purchase price and closing costs totaled $1,036,283.10.

2004, Attorney Joseph Wiesmeth, Esquire, incorporated A.P.S. Recycling, Inc. as a Pennsylvania subchapter "S" corporation with Spagnolo and Vasapolli each obtaining a 50% share. The corporation was formed to operate a recycling and scrap-yard business at the 2 Katz Road property, with Spagnolo handling the management of the operations.

By late 2005, an apparent dispute arose over the status of the real estate. On October 31, 2008, Vasapolli filed a complaint against Spagnolo alleging breach of an oral, or alternatively an implied, contract to convey the 2 Katz Road property. Spagnolo continued to manage the daily operation of A.P.S. Recycling, Inc. From 2004 to 2008, Spagnolo and Vasapolli contributed capital to the corporation as reflected in shareholder loans totaling $475,333.00. By March of 2009, the business was in financial distress. On March 3, 2009, Attorney Wiesmeth drafted a letter on behalf of Spagnolo addressed to Appellant, as attorney for Vasapolli, outlining the financial position of A.P.S. Recycling, Inc. and proposing remedial actions.

On March 6, 2009, Vasapolli filed a praecipe for a *lis pendens* against the real estate. On March 11, 2009, Spagnolo committed suicide. Vasapolli died on June 9, 2009. Estates were raised for both decedents and their respective personal representatives, Appellant and Co-Administrators, were substituted as parties in the October 31, 2008 action.

Business operations of A.P.S. Recycling, Inc. ceased following Spagnolo's death, when his heirs paid the employees and shuttered the premises. In December 2009, Appellant, on behalf of the estate of

Vasapolli, resumed operation of A.P.S. Recycling, Inc. On May 7, 2010, Co-Administrators filed an application to dissolve the A.P.S. Recycling, Inc., corporation. Co-Administrators averred general non-cooperation by Appellant regarding the business, including excluding them from its operation and records. Appellant opposed dissolution, and in an answer and new matter filed June 15, 2010, averred Vasapolli was the sole owner of all shares in A.P.S. Recycling, Inc. at the time of his death by virtue of Spagnolo's March 3, 2009 letter wherein he purportedly "requested to be relieved from his ownership in the business." Appellant's Answer and New Matter, 6/15/10, at 6, ¶ 27.

Trial on the matter was held on September 24-25, 2013. On January 28, 2014, the trial court determined, "A.P.S. Recycling, Inc. shall be dissolved, and its assets liquidated to pay creditors and shareholders." Trial Court Opinion and Order, 1/28/14, at 27, ¶ 5. The trial court also directed Appellant to prepare an accounting for the period commencing April 2009 to the date of the order. *Id.* at 26, ¶ 4.

On February 14, 2014, Appellant filed a post-trial motion, which the trial court denied on March 3, 2014.[4] Appellant filed a timely notice of appeal on April 2, 2014.[5]

_____

[4] We note Appellant untimely filed his post-trial motion. Appellant asserted the motion was timely pursuant to Pennsylvania Rule of Civil Procedure 227.1(c), providing, "[i]f a party has filed a timely post-trial motion, any
*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues for our review.

> [I.] Whether the trial court erred by ordering the dissolution and liquidation of A.P.S. Recycling, Inc. when the Vasapolli Estate owned 100% of the shares in the corporation by virtue of Spagnolo's intentional relinquishment of his 50% interest?
>
> [A.] Whether the trial court erred when it held the March 3, 2009 letter constituted a settlement offer as opposed to an intentional relinquishment of Spagnolo's 50% interest in A.P.S. Recycling, Inc.?

*(Footnote Continued)* ─────────────

other party may file a post-trial motion within ten days after the first post-trial motion." However, Co-Administrators did not file a post-trial motion in the instant case. They filed a post-trial motion in the companion, but distinct, case at 10539 CV 2008, which, although heard at the same time and disposed of in a common order, was not consolidated with the instant case. Thus, Co-Administrators' post-trial motion did not provide Appellant with additional time to file his post-trial motion in the instant case under Pa.R.C.P. 227.1(c). However, Co-Administrators have not objected and the trial court has addressed Appellant's issues. **See** Trial Court Order, 6/4/14, at 2 (finding on joint motion of the parties that all post-trial motions are deemed timely).

> Whenever a party files post-trial motions at a time when the court has jurisdiction over the matter but outside the ten-day requirement of Pa.R.C.P. 227.1, the trial court's decision to consider the motions should not be subject to review unless the opposing party objects.

**Watkins v. Watkins**, 775 A.2d 841, 845 n.1 (Pa. Super. 2001) (internal quotation marks and citation omitted).

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. In its May 8, 2014 Rule 1925(a) opinion, the trial court referenced its January 28, 2014 opinion as containing the reasons for its decisions.

> [B.] Whether the trial court erred in limiting the admissibility of the March 3, 2009 letter when it was neither a settlement offer nor inadmissible hearsay?
>
> [II.] Whether the trial court erred when it held Vasapolli did not accept the offer in the March 3, 2009 letter prior to Spagnolo's death?

Appellant's Brief at 4.

We review a trial court's determination of whether to order dissolution of a for-profit corporation for an abuse of discretion. ***Cerami v. Dignazio***, 424 A.2d 881, 889 (Pa. Super. 1980) (citations omitted). "It is well-settled that dissolution of a solvent corporation is a drastic measure to be invoked only in extreme circumstances. In the absence of a clear abuse of discretion or error of law, the chancellor's decision will not be disturbed on appeal." ***Id.*** (citations omitted).[6] Appellant's first issue charges the trial court with error for determining that Attorney Wiesmeth's March 3, 2009 letter sent on behalf of Spagnolo was an offer to settle. Appellant's Brief at 12. Rather, Appellant asserts the letter "was a unilateral transfer and/or relinquishment

_____

[6] Appellant challenges the trial court's dissolution order based only on its preliminary determination that the parties each retain a 50% share in A.P.S. Recycling, Inc., in contrast with his position that Vasapolli was the sole shareholder at the time of his death. Appellant does not alternatively claim that dissolution is improper if the parties are ultimately deemed equal shareholders. ***See generally*** 15 Pa.C.S.A. § 1981 (setting forth a trial court's authority to order involuntary dissolution of a corporation upon application of a shareholder or director).

by Spagnolo of his shares in [A.P.S. Recycling, Inc.]." *Id.* at 14. Relative to this issue, the trial court determined as follows.

> We find the letter from Attorney Wiesmeth was a proposal for settlement. … We also note that Attorney Wiesmeth's letter included the language of other "remuneration" for Spagnolo's time and investment that Vasapolli felt appropriate. This is an open term subject to different interpretation. Therefore, we find there was no offer and acceptance as to the transfer of Spagnolo's shares in A.P.S. to Vasapolli and the respective Estates still maintain a 50% interest each in the business.

Trial Court Opinion, 1/28/14, at 21-22.

In reviewing the trial court's legal conclusions regarding whether the March 3, 2009 letter evidenced a relinquishment, an offer and acceptance, or a mere proposal, we are guided by the following.

> Abandonment involves an intention to abandon, together with an act or omission to act by which such intention is apparently carried into effect. In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry, for there can be no abandonment without the intention to abandon. The intent to abandon is to be determined from all of the facts and circumstances of the case. The question of whether a particular act amounts to an abandonment is generally one of intention. When deciding whether an object has been abandoned, we must consider the nature of the property, the acts and conduct of the parties in relation thereto and the other surrounding circumstances.

*J.W.S. Delavau, Inc. v. Eastern America Transport & Warehousing, Inc.*, 810 A.2d 672, 684-685 (Pa. Super. 2002) (citations omitted), *appeal denied*, 827 A.2d 430 (Pa. 2003).

- 7 -

> [T]he question of whether an undisputed set of facts establishes a contract is a matter of law. It is also well settled that in order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted. In cases involving contracts wholly or partially composed of oral communications, the precise content of which are not of record, courts must look to the surrounding circumstances and course of dealing between the parties in order to ascertain their intent. We must, therefore, look to the parties' course of conduct to ascertain the presence of a contract.

*Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 609 (Pa. Super. 2014) (citations omitted).

We set forth Attorney Wiesmeth's March 3, 2009 letter below in full.

> Dear Attorney Ragano:
>
> I had a long meeting with Mr. Spagnolo recently whereat he explained the rather dire situation of the recycling facility (A.P.S.). In short, the company is in need of an immediate infusion of capital.
>
> Currently, the company owns approximately $700,000.00 to $1,000,000.00 of heavy equipment. The financial balance is approximately $90,000.00. Due to the severe economic turndown coupled with the low prices for scrap, the loan is in default and the equipment is subject to repossession.
>
> Mr. Spagnolo has never taken more than $200.00 per week in salary, despite working in excess of 40 hours per week. In addition, he has infused over $300,000.00 of his own money to date. He simply has no more available funds. In Mr.

Spagnolo's estimate, it will take a capital injection of approximately $100,000.00 to weather the current financial storm, after[]which, both the property and the company should be sold. Without such a capital injection, the real property will most likely be sold and the equipment lost. Obviously, such a drastic result would benefit no one.

My client proposes to deed the property to Mr. Vasapolli, as well as all of the shares in A.P.S. in return for Mr. Vasapolli addressing the financial woes of the company. Mr. Spagnolo would be willing to stay on to manage the salvage operation until such time as the economy improves and the real property and company can be sold. At the sale, Mr. Spagnolo would accept whatever remuneration Mr. Vasapolli would be willing to give him in return for his personal investments of time and money over the past years.

It should also be noted that Mr. Spagnolo contacted the $3,000,000.00 purchaser that was rejected by Mr. Vasapolli last year. He made inquiry as to whether or not he was still interested. The response was negative.

Kindly review this offer with Mr. Vasapolli and advise of his position. Thank you.

N.T., 9/25/13, at 8, Appellant's exhibit 18.

We agree with the trial court that a plain reading of the letter belies Appellant's claim that it evidenced an abandonment by Spagnolo of his shares in A.P.S. Recycling, Inc. in favor of Vasapolli. First, there is no "act or omission to act by which such intention is apparently carried into effect." ***J.W.S. Delavau, Inc.***, ***supra***. Rather, the letter speaks to a future proposed transfer of shares and property. Additionally, as noted by the trial court, the proposal is conditional, calling for reciprocating action by

Vasapolli, including sale of the business and property with reimbursement to Spagnolo in an amount to be determined. *See* N.T., 9/25/13, at 8, Appellant's exhibit 18.

Appellant's argument relies less on the terms of the letter than on the circumstances surrounding the writing of the letter, *i.e.*, the financial straits of the business and Spagnolo's subsequent suicide. Appellant's Brief at 15. "These findings demonstrate a course of conduct by the parties that reinforces the argument that Spagnolo abandoned his interest in A.P.S.[ Recycling, Inc.]" *Id.* These conclusions require pure speculation. The reasons for Spagnolo's suicide are not knowable from the evidence presented, and we conclude the record supports the trial court's finding, that the intent to abandon is not apparent from the attendant circumstances. Accordingly, we conclude the trial court did not err in its legal determination that the March 3, 2009 letter and Spagnolo's subsequent suicide did not effect a relinquishment or abandonment by Spagnolo of his shares in A.P.S. Recycling, Inc., but rather the letter was an offer to settle the parties business relationship. *See J.W.S. Delavau, Inc.*, *supra*.

Appellant next argues the trial court erred in holding the letter was inadmissible as an offer to settle under Pennsylvania Rule of Evidence 408(a). Appellant's Brief at 16. Appellant does not challenge the inadmissibility of an offer to settle but the treatment of the March 3, 2009 letter as an offer to settle. *Id.* "[T]he letter was not a "settlement offer"

nor did it constitute inadmissible hearsay, and therefore the trial court should not have found the letter inadmissible on those bases." ***Id.***

> The general rule is that an offer to compromise is not admissible in evidence at trial as an admission that what is offered is rightfully due or that liability exists. Our threshold inquiry, then, is whether the correspondence [] can be fairly characterized as relating to an offer of compromise. Although this Court has not, heretofore, defined an offer to compromise, it is generally defined as the settlement of differences by mutual concessions; an adjustment of conflicting claims.

***Rochester Mach. Corp. v. Mulach Steel Corp.***, 449 A.2d 1366, 1368 (Pa. 1982) (citations omitted). Appellant's real claim, however, is not the admissibility of the letter. Rather, Appellant challenges the trial court's characterization of the letter, which we affirmed above, as well as the trial court's limitation of the relevance of the letter. Appellant's Brief at 16. Appellant asserts the letter was not offered to prove or disprove a claim but "to show why [] Ragano, as Executor of the Vasapolli Estate, undertook all financial responsibility for A.P.S.[ Recycling, Inc.]" ***Id.*** at 17-18. Appellant also claims the letter is admissible as a statement against interest under Pa.R.E. 804(B)(3). The trial court explained at trial the purposes for which the letter was admitted.

> [] I think there are some other issues raised in that letter that are admissible and relevant, and I'll admit it only for those purposes; such as, the belief that there was a difficult economic time at the recycling center, also that both parties had, apparently, put money into the -- or at the very least, Mr. Spagnolo had put money into the business at that point in

time. Obviously, I've heard other testimony that so did Mr. Vasapolli. I will consider it for those other reasons, but not for any offer of compromise or settlement of the proceedings.

N.T., 9/25/13, at 6.

Appellant's attorney responded as follows.

Your Honor, I appreciate the ruling. Just for the record, I just want to put on the record, it's our position that we briefed this issue previously; that the letter is not an offer of settlement; and therefore, would not be admissible in that purpose. It's, rather than an offer of settlement, a capitulation saying, Here's my shares. Here's the real estate. I can't afford it anymore. I just wanted that noted on the record.

*Id.* at 7.

Therefore, at trial Appellant did not provide an offer of proof seeking admission on the specific grounds now espoused on appeal, and the trial court never ruled on the same. The issues are, therefore, not preserved. *See* Pa.R.E.103 (requiring specific objection to admitted evidence or offer of proof to refused evidence in order to preserve the issue on appeal). Accordingly, we conclude Appellant's first issue lacks merit.

In his final issue, Appellant claims that if the March 3, 2009 letter is an offer to settle, then the trial court erred in concluding Vasapolli did not accept the offer through his subsequent conduct. Appellant's Brief at 19. Specifically, Appellant claims the fact that the Vasapolli Estate bore all expenses related to the continuing operation of A.P.S. Recycling, Inc.

supports a conclusion Vasapolli accepted Spagnolo's offer to transfer his shares. *Id.* at 20; *see Prieto Corp.*, *supra.*

To the contrary, the trial court found as follows.

> We do not find the offer was accepted. [] We also find that even if the letter was a bona fide offer to settle, Spagnolo died before the offer was accepted by Vasapolli. Furthermore, the Vasapolli Estate alleges that Vasapolli accepted the offer by immediately paying all of the expenses of A.P.S., and this conduct evidences acceptance. However, whether this conduct was sufficient or not is irrelevant, as any such conduct was undertaken after Spagnolo died. We do not believe there can be acceptance of an offer made, after the person making the offer has died.

Trial Court Opinion, 1/28/14, at 22; *see First Home Sav. Bank, FSB v. Nernberg*, 648 A.2d 9, 15 (Pa. Super. 1994) (citing Section 36 of the Restatement (Second) of Contracts (1981) for the proposition that "[a]n offeree's power to accept is so terminated by: … death or incapacity of either party), *appeal denied*, 657 A.2d 491 (Pa. 1995).

Appellant claims the trial court's own specific finding belies its conclusion that Vasapolli did not act prior to Spagnolo's death. Appellant's Brief at 20. Specifically, Appellant cites the trial court's finding of fact number 55, which the trial court expressed as follows. "Following receipt of the March 3, 2009 letter, Vasapolli, and subsequently Vasapolli's Estate bore all expenses related to the property as well as A.P.S. Recycling, Inc." Trial Court Opinion, 1/28/14, at 8. We disagree.

"When reviewing the findings of a court in equity, an appellate court's review is limited to a determination of whether the chancellor committed an error of law or abused his discretion. A final decree in equity will not be disturbed unless it is unsupported by the evidence or demonstrably capricious." *T.W. Phillips Gas and Oil Co. v. Jedlicka*, 42 A.3d 261, 266–267 (Pa. 2012) (internal quotation marks and citation omitted). Here the trial court's finding that Vasapolli bore all expenses following the March, 3, 2009 letter, is not incompatible with its finding that he did not do so until after Spagnolo's March 11, 2009 suicide. As the trial court's findings are supported by the record, we will not disturb them on appeal. *See. Id.* For these reasons, Appellant's second issue also fails.

In sum, we discern no error in the trial court's conclusion that the March 3, 2009 letter from Attorney Wiesmeth on behalf of Spagnolo was not a relinquishment of his shares in A.P.S. Recycling, Inc. We further discern no abuse of discretion in the trial court's evidentiary ruling pertaining to limiting the admissibility of the letter and Appellant's specific issues waived. Finally, we discern no error or abuse of discretion in the trial court's finding that Vasapolli did not take sufficient action prior to Spagnolo's suicide as could constitute an acceptance of an offer to transfer the shares. Accordingly, we affirm the portion of June 4, 2014 judgment pertaining to paragraphs four and five of the trial court's March 3, 2014 order.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2015